Irina Roller (IR 0177)
Attorney for Plaintiffs
LAW OFFICES OF IRINA ROLLER, PLLC
40 Wall Street, Suite 2508
New York, NY 10005
(212) 688-1100

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____X

**R.S.** individually, and on behalf of his child,
**A.S.**, a minor,

Plaintiffs,

     -against-

**NEW YORK CITY DEPARTMENT OF**
**EDUCATION, and MEISHA PORTER**,
in her official capacity as Chancellor of the New York
City Department of Education

Defendants.

_____X

**COMPLAINT**

**No 1:21-cv-02257**

Individuals with Disabilities
Education Act; Rehabilitation Act of
1973; Americans with Disabilities
Act; 42 U.S.C. §1983; N.Y. Educ.
Law §4401 *et seq*.

Plaintiff, R.S. (Parent), individually and on behalf of his minor child A.S., alleges the

following against Defendants, New York City Department of Education (DOE) and Meisha

Porter, in her official capacity as Chancellor of the DOE:

**STATEMENT OF THE CASE**

This case is the culmination of a frustrating, unlawful series of actions by the DOE.

Systematic delay by the DOE – already the subject of decades-long class action lawsuits – has

forced Parent to spend more than $200,000 for A.S. to receive a meaningful education. Parent

now asks this Court to compel the DOE to comply with its clear obligations under the IDEA.

Parent also seeks attorney's fees as a "prevailing party" under the IDEA in his 2020 Due Process action, as well as for prosecuting this action.

The DOE's unlawful actions, which appear to follow official policies designed to create or having the effect of creating months-long (and sometimes years-long) delays in reaching final decisions on the merits of IDEA claims, have significantly undermined Parent's and A.S.'s rights, and will continue to do so without prompt relief.

## PARTIES

1.  A.S. is a ten-year-old "child with a disability" as defined by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401, *et seq*.

2.  A.S. is a "qualified individual with a disability" as defined by Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794(a) and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132.

3.  R.S. and A.S have resided at all relevant times in New York City, within the geographical area served by the DOE.

4.  Defendant DOE is the Local Educational Agency (LEA) responsible for providing children like A.S. a free appropriate public education (FAPE) under the IDEA, the RA, and New York's education statutes and administrative code.

5.  The DOE is a recipient of federal funding for purposes of the RA.

6.  DOE's administrative offices are located at 52 Chambers Street, New York, NY 10007.

7.  Defendant Meisha Porter is the Chancellor of the New York City Department of Education. She is entrusted with the powers and duties set forth in N.Y. Education Law §2590-h,

including the power and duty to control and operate "all special education programs and

services…."

### DOE HAS IGNORED AND FAILED TO IMPLEMENT IHO AND COURT ORDERS

8.    Among the DOE's duties as an LEA, both under New York law and as a condition for

receiving federal IDEA funds, is to guarantee due process rights to children with disabilities and

to their Parents.

9.    Since 2003, the DOE has been the defendant in class action litigation due to its

systematic failure to implement IHO decisions under the IDEA in timely fashion. *See L.V., et al*

*v. New York City Dep't of Educ.*, No. 03 Civ. 9917 (LAP) (S.D.N.Y.).

10. On December 11, 2007, the DOE voluntarily entered into a stipulation with the *L.V.*

class plaintiffs (Stipulation).  *See L.V.,* No. 03. Civ. 9917 (ECF 236-1), attached as Exhibit A.

11. The Stipulation established three mandatory benchmarks that the DOE had to meet;

for each benchmark it had to prove that it had implemented a specified percentage of IHO orders.

12. The Stipulation expressly reserved the rights of future class plaintiffs to seek

appropriate individual relief in an appropriate forum. Ex. A at 25, ¶18.

13. In September 2011, the DOE created an Implementation Unit, the purpose of which

was to address its failure to meet the Stipulation's benchmarks.

14. In September 2019, with the Implementation Unit allegedly failing to meet the third

mandatory benchmark, the *L.V.* class plaintiffs filed a motion for appointment of a special master

to bring the DOE into compliance with the Stipulation.  MOL in Support of Plaintiff's Mot. for

Appointment of Special Master, *L.V.*, No. 03-cv-09917 (ECF 206).

15. In the spring of 2020, the COVID crisis struck. On September 29, 2020, due solely to

the COVID crisis, the Honorable Loretta A. Preska stayed the *L.V.* class plaintiffs' motion for a

special master, subject to renewal of the motion at the end of the Fall 2020 semester. *L.V.*, No. 03-cv-09917 (ECF 229).

16. Meanwhile, the DOE had adopted a new policy (the COVID policy) under which it unilaterally refused to implement IHO and court orders to pay private school tuition in cases where, by its sole determination, the private school had not met certain standards for remote learning. The DOE adopted the COVID policy despite IHOs and courts having deemed these private placements appropriate.

17. On October 29, 2020, the *L.V.* class plaintiffs filed a motion for declaratory relief, seeking a declaration that the COVID policy violated the IDEA, New York law, and the Stipulation. *L.V.*, No. 03-cv-09917 (ECF 234). *See* MOL in Support of Plaintiffs' Mot. for Decl. Relief. *L.V.*, No. 03-cv-09917 (ECF 238).

18. On February 18, 2021, Judge Preska issued her decision on the *L.V.* class plaintiffs' motion. *See L.V.*, No. 03-cv-09917 (ECF 258), attached as Exhibit B. Rejecting the DOE's excuses for failing to make tuition payments under the IDEA's pendency provisions, Judge Preska held: "None of [DOE's] contentions holds any water." *Id*. at 12. She noted that an IHO's order is binding on the parties if no appeal is taken. *Id*. at 13. If the DOE does not appeal an order, "DOE's only lawful course of action is to implement [it]." *Id*. (Emphasis in original). She concluded that the DOE "is acting unlawfully by withholding tuition payments" under the COVID policy. *Id*. at 16.

19. On March 12, 2021, the Honorable Lorna G. Schofield issued an Order of Preliminary Injunction and Temporary Restraining Order in a similar action against the DOE. *L.R.1, et al v. N.Y.C. Dep't of Educ., et al*, No. 1:20-cv-10505-LGS (S.D.N.Y.) (ECF 31), attached as Exhibit C.

20. The DOE's actions and omissions here mirror the unlawful actions it took against the *L.V.* class plaintiffs and the *L.R.1* plaintiffs. The DOE, again unilaterally and without explanation, has chosen not to implement both a final IHO order, not to make automatic pendent tuition payments despite conceding its duty to do so, and to ignore an IHO's interim order of pendency.

## JURISDICTION AND VENUE

21. The Court has subject matter jurisdiction over this action under the IDEA, the RA, the ADA, 42 U.S.C. §§ 1983, 1988, and 28 U.S.C. § 1331, conferring jurisdiction in cases arising under the Constitution and laws of the United States, and 28 U.S.C. § 1343(a)(3),(4), conferring original jurisdiction on district courts to recover damages or secure equitable relief under any Act of Congress guaranteeing equal protection of the law or providing for the protection of civil rights.

22. The Court has supplemental jurisdiction to adjudicate New York state law claims arising out of the same facts as in the asserted federal claims. 28 U.S.C. § 1367.

23. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(l) as the DOE has its principal offices in this District.

24. Plaintiffs have exhausted their administrative remedies for all claims that require exhaustion.

## FACTS

25. A.S. is a bright young man whose social and emotional disability has long caused him serious problems in school. He is diagnosed with Disruptive Mood Dysregulation Disorder, Social (Pragmatic) Communication Disorder, and Specific Learning Disability with specific impairments in written expression.

26. A.S.'s evaluating doctor, Preetika Mukherjee, M.D., recommended that he be educated in a structured, supportive, individualized classroom, within a small school environment. She recommended an environment with minimal interruptions and distractions and social/emotional/behavioral support to help him cope with his emotional dysregulation, anxiety and frustration, and research based interventions in writing, reading and math, and executive functioning. She also recommended that he be given clear rules and instructions, assistance in anticipating transitions, along with other individualized accommodations.

27. Because he is a bright child, A.S. sometimes performs well academically despite his disabilities. Unfortunately, he struggles with appropriate social behavior and regulation in a typical classroom.

28. Thus, after several unsuccessful private school placements, on or about October 23, 2019, Parent requested that the DOE offer A.S. a FAPE; that is, to convene a committee on special education (CSE) and draft an Individualized Educational Program (IEP) for A.S.[1]

29. On November 4, 2019, Parent sent the DOE a private neuropsychological evaluation, which gave the DOE significant information about A.S.'s disability and programming needs.

30. On December 18, 2019 – almost two months after Parent requested an IEP – the DOE sent Parent a form requesting consent to evaluate A.S.  Parent signed and returned the form immediately.  But the DOE's delay in sending the form impermissibly delayed it from timely completing A.S.'s evaluation and drafting an IEP.

31. On January 3, 2020, the DOE issued an evaluation report.  The report failed to mention A.S.'s maladaptive behaviors, despite those behaviors having seriously affected his

---

[1]CSE is New York's term for the IDEA's requirement to convene an IEP team.

educational opportunities. The DOE subsequently conceded that it failed to evaluate A.S. in all areas of suspected disability.

32. On January 16, 2020, with the DOE not yet offering A.S. an IEP or school location, Parent sent an IDEA-required 10-day notice,[2] notifying the DOE that he intended to place A.S. at the Titus School, a private school in Manhattan for children with special needs, and to seek tuition reimbursement from the DOE.

33. Parent enrolled A.S. at the Titus School on January 21, 2020.

34. On February 4, 2020, the DOE finally convened a CSE meeting to develop an IEP for A.S. Unfortunately, the CSE was unprepared, with no DOE attendee having worked directly with A.S.  The CSE had not observed A.S. in the classroom and had not administered a functional behavior assessment (FBA), despite A.S. having long exhibited classroom behaviors that impeded his education.

35. On February 28, 2020, Parents finally received a copy of the IEP and a school location letter.

36. Parent had no choice but to reject the IEP, however, given its failure to take into account A.S.'s individualized needs: It lacked an adequate behavior intervention plan and measurable behavior goals.

37. On April 9, 2020, Parent filed the first of two IDEA Due Process complaints (DPC1).

38. DPC1 alleged that the DOE denied FAPE to A.S. for the 2019-20 school year.  It requested that the IHO order the DOE to reimburse the cost of A.S.'s tuition at the Titus School. It further requested that the DOE reimburse Parent for the cost of A.S.'s private neuropsychological evaluation (Independent Educational Evaluation or IEE).

_____

[2] 20 U.S.C. § 1412(a)(10)(C)(iii)(I).

39. A.S. continued at the Titus School for the remainder of the 2019-20 school year (even as the COVID crisis developed).

40. The 2019-20 school year officially ended on June 30, 2020.

41. Despite Parent requesting a Due Process hearing on April 9, 2020, the DOE did not appoint an IHO until September 4, 2020, nearly five months later and well into the 2020-21 school year.

42. The IHO appointed IHO Daniel Ajello, Esq. on September 4, 2020.  IHO Ajello issued his Findings of Fact and Decision (FOFD) 45 days later on October 19, 2020. *See* FOFD, attached as Exhibit D.

43. The delay in the IHO's appointment and resulting FOFD violated the plain text of the IDEA, which requires: (i) that an LEA convene a "resolution session" with a parent within 15 days of the filing date of the complaint and complete the resolution process within 30 days of the filing date (the Resolution Period); and (ii) that a final decision on the merits of a due process complaint be issued no later than 45 days after the end of the Resolution Period.  A parent therefore has a right to a final decision on the merits of a due process complaint within 75 days of its filing date.

44. Here, the DOE waited 148 days just to appoint an IHO. The IHO's FOFD came 45 days later, 193 days after the filing date – 118 days late.

45. Had the DOE complied with the IDEA's timelines, there would have been an IHO decision no later than June 23, 2020, 75 days from the April 9, 2020 filing date.

46. Throughout this entire period, Parent has paid A.S.'s tuition at the Titus School. *See* Exhibit E - Declaration of R.S., dated March 15, 2021 at ¶6.

47. From January 21, 2020 through June 24, 2020, Parent paid $75,715 in tuition. *See* Ex. E at ¶¶7-8 (attaching canceled checks and bank statements); Exhibit F - Affidavit of Natalie Brandefine, Exec. Dir. of Titus School, at 2.

48. Because DPC1's denial of FAPE allegations under the IDEA only related to the 2019-20 school year, the October 19, 2020 FOFD only resolved Parent's allegations through June 30, 2020.

49. However, A.S. requires a 12-month educational placement. Therefore, although the 2019-20 school year ended on June 30, 2020, A.S. continued at the Titus School beginning on July 1, 2020.

50. Tuition at the Titus School for the 2020-21 school year is $150,000. Ex. F at 3.

51. Parent has paid $124,870 in tuition to the Titus School for the 2020-21 school year. Ex. E at ¶9; Ex. F at 3.

52. Parent has paid a total of $200,505 to the Titus School to date.  Ex. E at ¶10.

53. Parent owes an additional $25,130 in tuition for the 2020-21 school year. *See* Ex. E at ¶11; Ex. F at 3.

54. These payments are a financial hardship for Parent. Parent has depleted a significant portion of his family's savings and will soon have to access a retirement account to continue making tuition payments, likely incurring financial (tax) penalties for doing so. Ex. E at ¶12.

**FIRST DUE PROCESS HEARING (FALL 2019 TO FALL 2020)**

55. Between the fall of 2019 and the fall of 2020, Parent's counsel, Law Offices of Irina Roller, PLLC (Roller Law), prepared for A.S.'s due process hearing.

56. Roller Law concentrates its practice in Special Education law. Its founder, Irina Roller, Esq., has practiced law for more than 20 years, and has practiced Special Education law full time since 2007.

57.  Roller Law's preparations for the first due process hearing included, among other things:

- Advising Parent on his and A.S.'s rights under the IDEA and New York law
- Reviewing A.S.'s educational records and psychological and medical reports and speaking with A.S.'s medical and psychological providers.
- Preparing pleadings
- Drafting affidavits and witness outlines
- Preparing exhibits for trial
- Preparing for cross-examinations
- Preparing for and attending pretrial hearings
- Communications and negotiations with opposing counsel
- Attending trial dates, and
- Drafting post-trial briefing.

58. DOE never offered to resolve this case without a hearing, despite Roller Law's repeated requests to do so after the April 9, 2020 DPC1 filing.

59. On September 9, 2020, IHO Ajello convened a pre-hearing conference.

60. Hearings took place on September 17 and September 24, 2020.

61. On October 19, 2020, IHO Ajello issued the FOFD.

62. IHO Ajello held that the DOE's March 2020 IEP denied A.S. a FAPE. Ex. D at 23-24.

63. He further held that the Titus School met A.S.'s individualized needs.  *Id*. at 25.

64. He held that Parent in no way frustrated any action of the DOE.  *Id*. at 25-26.

65. He held that Parent was entitled to $75,715 in reimbursement for tuition at Titus School and for A.S.'s extended day program and weekend camp. *Id*. at 26.

66. He held that the Parent was entitled to reimbursement for cost of Independent Educational Evaluation done by Dr. Mukherjee in the amount of $6,500.00. *Id*. at 28.

67. The DOE did not appeal the IHO's FOFD.

## SECOND DUE PROCESS HEARING (FALL 2020 TO THE PRESENT)

68. The first due process action dealt only with the 2019-20 school year, which ended on June 30, 2020.

69. On June 18, 2020, Parent sent the DOE a 10-day letter advising that unless it offered FAPE to A.S., he would place A.S. at the Titus School for the 2020-21 school year and seek tuition reimbursement.

70. The DOE did not convene a new CSE meeting to address Parent's concerns or offer a new IEP for the 2020-21 school year.

71. The March 2020 IEP remained in effect at the beginning of the 2020-21 school year.

72. On August 24, 2020, the DOE provided Parent a belated placement letter, assigning A.S. to the M169 Robert F. Kennedy School (M169).

73. No one from the DOE contacted Parent to start a transition for A.S. from Titus School to M169.

74. Parent spoke with a parent coordinator at M169 on September 8, 2020 – after the school year had begun – but the coordinator gave no meaningful information about how M169 could meet A.S.'s complex needs, or how it would address A.S.'s distance learning needs during the COVID period.

75. On September 24, 2020, before IHO Ajello had completed the first due process hearing or issued the FOFD, Parent filed the second due process complaint (DPC2), alleging that the DOE denied A.S. a FAPE for the 2020-21 school year.

76. DPC2 sought reimbursement for A.S.'s tuition at the Titus School for the 2020-21 school year.

77. DPC2 further sought an interim order confirming that the Titus School was A.S.'s pendent placement under the IDEA. The IDEA requires LEAs to maintain a child's pendent placement – his or her educational status quo – for the duration of a due process action. Where a child's pendent placement is a private school, the LEA must pay tuition during the due process action.

78. The DOE again failed to appoint an IHO in time to meet the IDEA's decision timeline. During the delay, on October 19, 2020, IHO Ajello issued the FOFD.

79. As of this filing, the DOE has still not implemented the FOFD. After nearly five months, it has neither reimbursed Parent for A.S.'s 2019-20 tuition at the Titus School, nor begun paying his monthly tuition under the IDEA's pendency provisions.

80. As of the date of this filing, Parent has paid $200,505 in tuition to the Titus School and $6,500 for the independent neuropsychological evaluation.

81. On January 26, 2021, one hundred twenty-four (124) days after Parent filed DPC2, the DOE finally appointed IHO Rachel Gibbons, Esq, to preside over the DPC2 action.

82. That same day Robin J. Shin, Consultant Attorney in the DOE's Special Education Unit, notified the IHO and Parent's counsel that it was contesting A.S.'s pendent placement at the Titus School. Shin conceded that pendency "lies in the 10/19/20 FOFD for DPC 193517 (Titus tuition)" and that it would be retroactive to that date. Shin challenged Parent's assertion that retroactivity began before 10/19/2020.

83. Despite this concession, and despite the IDEA's automatic injunction provisions, the DOE did not begin making tuition payments to the Titus School.

84. On February 4, 2021, IHO Gibbons held a hearing to determine A.S.'s pendent placement during the DPC2 action. As noted above, the DOE did not dispute that the Titus School was A.S.'s pendent placement. The central question was *when* pendency began.

85. On February 28, 2021, IHO Gibbons issued an Interim Order of Pendency (IOP), holding that the pendency period for the DPC2 action began on October 19, 2021, the issue date for IHO Ajello's FOFD. *See* IOP at 15, attached as Exhibit G.

86. Based on the two orders – IHO Ajello's FOFD and IHO Gibbons' IOP – the DOE is immediately required to:

(1) Reimburse Parent $75,715 for A.S.'s tuition at the Titus School for the 2019-20 school year (from January to June 30, 2020) and $6,500 for an IEE,

(2) Pay A.S.'s tuition at the Titus School from October 19, 2020 to the present, and

(3) Make tuition payments to the Titus School until the DPC2 action is concluded.

87. Due solely to the DOE's delays in appointing IHOs for *both* due process actions, the 110-day period between July 1, 2020 and October 19, 2020 (the Stub Period), which is part of the 2020-21 school year, is not covered in the relief expressly ordered in the two IHO decisions.

88. Under IHO Gibbons' IOP, Parent is not entitled to tuition reimbursement for the Stub Period until he prevails in the DPC2 action.

89. During the Stub Period, Parent made payments of $22,500 (7/3/20), $12,650 (8/1/20), $12,650 (9/16/20) and $12,650 (10/6/20), totaling $60,450. Ex. E at ¶9.

90. On March 3, 2021, the DOE sent Parent's counsel notice that IHO Gibbons had recused herself from the DPC2 action and that no IHO had been appointed to hear the action. IHO Gibbons' recusal is consistent with the DOE's policy of appointing IHOs solely for purposes of pendency determinations.

91. There is no provision in either the IDEA or New York Special Education law for IHOs to recuse themselves following pendency determinations. However, New York law provides with respect to recusal of judges:

> Any judge who recuses himself or herself from sitting in or taking any part in the decision of an action, claim, matter, motion or proceeding shall provide the reason for such recusal in writing or on the record; provided, however, that no judge shall be required to provide a reason for such recusal when the reason may result in embarrassment, or is of a personal nature, affecting the judge or a person related to the judge within the sixth degree by consanguinity or affinity.

92. When asked, IHO Gibbons stated on the record that she did not intend to retain jurisdiction over the DPC2 action after making a pendency determination, stating: "I'm going to be recusing, because the student is currently in school. He is receiving services."

93. On information and belied, the DOE has implemented an unlawful policy requiring or exerting influence on IHOs to recuse themselves from IDEA actions without legitimate cause to do so. The effect of this policy has been to deny Parent and A.S. a timely hearing and decision on the merits for the DPC2 action.

94. As of this filing, it is 166 days since Parent filed DPC2 and the DOE has not yet appointed an IHO to hear the merits of his action. Moreover, DOE has never offered to resolve the DPC2 action without a hearing, despite Roller Law's repeated requests to do so after the filing of DPC2.

14

## CLAIMS FOR RELIEF

### Count I
### IDEA, New York Educ. Law § 4401, *et al*
### *Statutory Review of Incorrect Pendency Ruling*

95. The IDEA and New York Education Law 4401[3] each provide in pertinent part:

[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child….

20 U.S.C. § 1415; 34 C.F.R. § 518(a); N.Y. Educ. Law. 4044[4][a].

96. IHO Ajello's October 19, 2020 FOFD ratified Parent's January 2020 decision to remove A.S. from the DOE and to place him at the Titus School for the 2019-20 school year.

97. Where an IHO agrees with a parent that a change of the child's placement was appropriate, that placement is treated as an agreement between the State and parents under the IDEA; it is the pendent placement under the IDEA. 34 C.F.R. §518(d).

98. In the IOP, IHO Gibbons erred in holding that the pendency period for the DPC2 action began on October 19, 2020, the date of IHO Ajello's FOFD.

99. The pendency period should begin on the date by which the IDEA required an FOFD be issued: June 23, 2020.  In other words, the pendency period should include the Stub Period.

100.    If, as IHO Gibbons ruled, a later date is used, the DOE will profit from its own failure to meet the IDEA's decision timeline. Such a rule gives the DOE a perverse incentive to delay appointing IHOs, as delay allows it to avoid implementing pendency orders and paying tuition costs.

101.    Alternatively, if the pendency period is deemed not to include the entire Stub Period, it must at the very least be deemed to have begun on the date when Parents filed DPC2.

---

[3] New York's special education statute has minor wording differences.

102.    Based on either date, IHO Gibbons' IOP violates the pendency provisions of the IDEA and New York Education law § 4404 and must be vacated.

103.    Exhaustion of this claim is not required. IHOs' pendency orders are reviewable without having to be exhausted.

**Count II**
**RA, ADA**
**Denial of FAPE**
**Discrimination on the Basis of Disability**

104.    A.S. is a "qualified individual with a disability" as defined by the RA and ADA. He is eligible to receive services and participate in programs offered by the DOE.

105.    A.S.'s disabilities affect his ability to learn, think, work and concentrate, among other major life activities. 42 U.S.C. § 12102(2)(A).

106.    The DOE is a recipient of federal funding for purposes of the RA.

107.    The ADA provides:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132.

108.    Section 504 of the RA similarly provides:

No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency…. 29 U.S.C. § 794(a).

109.    RA regulations further require schools to provide FAPE to children with disabilities, stating, in pertinent part:

[T]he provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of

nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36

34 C.F.R. § 104.33(a).

110.    The DOE has violated and failed to provide A.S. a FAPE under the RA.

111.    The DOE disregarded IHO Ajello's FOFD by failing to reimburse Parent for A.S.'s tuition at the Titus School for the 2019-20 school year or for the IEE.

112.    It has failed to make pendency tuition payments to the Titus School since the FOFD and since IHO Gibbons' pendency order.

113.    It failed to make a FAPE available to A.S. for the 2020-21 school year because it offered the same inappropriate IEP for the 2020-21 school year that it offered for the 2019-20 school year.

114.    The DOE's actions and omissions are reckless, knowing and/or intentional, and they constitute intentional discrimination under the RA and ADA.

115.    The DOE's actions and omissions have prevented A.S. from receiving a *free* appropriate public education, as Parent has been forced to pay over $200,000 in tuition for A.S.'s education at the Titus School.

116.    If not for A.S.'s disabilities, and the DOE's failure to offer him FAPE, he would have been able to attend public school within the DOE.

117.    The DOE's actions and omissions have denied A.S. his rights under the RA and ADA.

### Count III
### 42 U.S.C. § 1983, IDEA, RA, ADA
### *Enforcement of IHO Order*

118.    Parent incorporates by reference each allegation stated above.

119.    Title 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

120.    On October 19, 2020, IHO Ajello held in his FOFD that the DOE, in violation of the IDEA, denied FAPE to A.S. for the 2019-20 school year. He ordered the District to reimburse Parent $75,715 for tuition costs and $6,500 for an IEE.

121.    The DOE did not seek review of the FOFD with the New York State Review Officer. The FOFD is final and not appealable.

122.    The DOE has not implemented the FOFD despite Parent having repeatedly asked it to do so.

123.    IHO orders under the IDEA are enforceable through Section 1983.

124.    The DOE's failure to implement the FOFD has deprived Parent and A.S. of their rights under the IDEA, in violation of Section 1983.

125.    The DOE has also violated the RA and ADA by denying A.S. a FAPE and by discriminating against him on the basis of his disabilities.

126.    Defendants' violations of the RA and ADA are enforceable through Section 1983.

127.    Exhaustion of this claim is not required.

**Count IV**
**Automatic Injunction**
**IDEA and N.Y. Educ. Law. 4044[4][a]**
***Failure to Make Pendency Payments***

128.    Parent incorporates by reference each allegation stated above.

129.    The IDEA provides: "[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise

agree, the child shall remain in the then-current educational placement of the child….” 20 U.S.C. § 1415; 34 C.F.R. § 518(a); N.Y. Educ. Law. 4044[4][a].

130.    In her February 28, 2021 interim pendency order, IHO Gibbons held that the Titus School is A.S.'s pendent placement during the pendency of the DPC2 action.

131.    She ordered that "the District shall provide funding for tuition of the Student's placement at the Titus School, *nunc pro tunc*, to October 19, 2020 and continuing through the pendency of the instant matter."

132.    The DOE has not implemented IHO Gibbons' pendency order. It has neither reimbursed Parent for payments made to the Titus School since October 19, 2020, nor made monthly tuition payments to the Titus School.

133.    Parent has made payments of  $12,650 (11/2/20), $12,650 (12/1/20), $12,650 (1/3/21), $12,650 (2/1/21), $170 (2/22/21), $12,650 (3/1/21), totaling $63,420 since the date of the FOFD. Ex. E at ¶9.

134.    Exhaustion of this claim is not required.

135.    "[T]he enforcement of the pendency provision is automatic and should occur without regard to such factors as irreparable harm likelihood of success on the merits and balancing of the hardships." *Abrams v. Carranza*, No. 19-CV-4175, 2019 U.S. Dist. LEXIS 95403, at *8 (S.D.N.Y. June 6, 2019).

## Count V
## IDEA, RA, ADA, § 1983, § 1988(b)
### *Attorneys' Fees*

136.    Parent incorporates by reference each allegation stated above.

137.    Parent prevailed in the first due process action, as evidenced by the FOFD. The DOE did not seek review of the FOFD.

138.    Parent is therefore the prevailing party for purposes of 20 U.S.C. § 1415(i)(3)(B) because: (a) the FOFD altered the legal relationship between Parent and the DOE in such a way as to benefit Parent directly, and (b) Parent completely succeeded on the merits in the first Due Process action.

139.    Should Parent prevail in this action, he will also be a prevailing party under the IDEA, RA, ADA and § 1983.

140.    A prevailing party under the IDEA, RA, ADA and § 1983 is entitled to reasonable attorney fees. 20 U.S.C. § 1415(i); 29 U.S.C. § 794a(b); 42 U.S.C. § 12205; 42 U.S.C. § 1983, 1988(b).

141.    Parent is further entitled to reasonable "fees on fees" and costs for time expended and costs incurred in prosecuting this federal fee action.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

1.  Assume jurisdiction of this action and retain jurisdiction until the Court is notified that the DOE has complied in full with the Court's order.

2.  Vacate IHO Gibbons' interim pendency order and hold that A.S.'s pendent placement at the Titus School began no later than June 23, 2020.

3.  Find that the DOE has denied A.S. FAPE under the IDEA, § 4401, and the RA by failing to implement the FOFD.

4.  Find that the DOE has denied A.S. FAPE under the IDEA, § 4401, and the RA by failing to offer an appropriate IEP for the 2020-21 school year.

5.  Find that the DOE has discriminated against A.S. on the basis of his disabilities under the RA and ADA.

6.  Find that all Defendants have violated § 1983 through the DOE's ongoing violations of the IDEA, RA and ADA.

7.  Issue an order under § 1983, and preliminary injunction under Fed. R. Civ. P. 65, requiring the DOE:

    a. Immediately to reimburse Parents $75,715 for A.S.'s 2019-20 tuition at Titus School and $6,500 for his independent educational evaluation,

    b. To file with this Court a notice of proof of compliance, endorsed by Parents, within 10 days of the Court's order.

8. Enforce the IDEA's automatic injunction provision by issuing an order requiring the DOE immediately:

    a. To reimburse Parent for all pendent tuition payments he has made from July 1, 2020 to the date of this Court's order,

    b. To begin making prospective tuition payments to the Titus School during the entire pendency period, from date of this Court's order through the conclusion of the DPC2 action.

    c. To segregate and maintain tuition sufficient funds for at least three months prospective direct tuition payments to the Titus School for A.S.

    d. To specify an individual or individuals at the DOE (or the Implementation Unit) with whom Parent can confirm that there are sufficient segregated funds to pay for three months' tuition.

9. Find that Parent is a prevailing party under the IDEA, RA, ADA and §1983.

10. Award Parents reasonable attorneys' fees for prosecuting the first due process action, this enforcement action, as well as fees on fees.

11. Award Parent the costs of this action, as well as pre- and post-judgment interest.

12. Award any other relief this Court deems appropriate.

Dated: March 15, 2021               Respectfully Submitted,
New York, NY

                             /s/ Irina Roller_____
                             Irina Roller (IR 0177)
                             Benjamin J. Hinerfeld (BH 2180)
                             **LAW OFFICES OF IRINA ROLLER, PLLC**
                             Attorneys for Plaintiffs
                             40 Wall Street, Suite 2508
                             New York, NY 10005
                             (212) 688-1100